DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Raymond Edwards, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that: (1) the commission considered all allowed conditions of the two industrial claims at issue; and (2) the commission did not abuse its discretion in noting that relator had failed to seek vocational rehabilitation during the 16 years since he left the workforce. Therefore, finding some evidence to support the commission's decision, the magistrate has recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. Relator's first three objections are interrelated. In essence, relator argues in each of these objections that the magistrate erred in finding that relator's claim had not been allowed for "lumbosacral spondylosis." In his fourth objection, relator asserts that the magistrate erred by misreading that portion of the commission's order which addresses relator's failure to seek rehabilitation. We find no merit in relator's objections.
 {¶ 4} As the magistrate points out, the record before the court conclusively shows that neither of relator's claims were allowed for "lumbosacral spondylosis," despite reference to such condition on the notice of referral issued by the Ohio Bureau of Workers' Compensation. Relator offers nothing to dispute this finding. Therefore, there was no reason for the commission to address this nonallowed condition. With respect to the allowed conditions, there was some evidence before the commission that relator was capable of sustained remunerative employment. Specifically, the reports of Dr. Lutz and Dr. Schrimpf indicate that relator is capable of sustained remunerative employment. Therefore, we overrule relator's first three objections.
 {¶ 5} Regarding relator's fourth objection, we agree with the magistrate that relator has not shown that the commission abused its discretion when it considered relator's failure to attempt to learn new skills and/or improve his educational functioning. Nor did the magistrate misread the commission's order. Injured workers are held to a standard of accountability and the failure to improve one's employment skills or to seek vocational rehabilitation can be taken into consideration. State exrel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250. Therefore, we overrule relator's fourth objection.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We adopt the magistrate's decision as our own including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
McGrath and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Raymond Edwards, :
 Relator, :
v. : No. 04AP-631
The Industrial Commission of Ohio : (REGULAR CALENDAR)
and H.B. Fuller Company Corp., :
 Respondents. :

 MAGISTRATE'S DECISION Rendered on December 28, 2004 Roeller, Roeller Jameson, and Robert K. Roeller, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 7} In this original action, relator, Raymond Edwards, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 8} 1. Relator has two industrial claims. Claim No. OD182451 is allowed for "bilateral sensorineural hearing loss."
 {¶ 9} Claim No. 80-46774 was initially allowed for "contusion lumbar spine and right elbow and right shoulder" for an injury that occurred June 2, 1980. Following a September 1983 hearing, a district hearing officer ("DHO") additionally allowed the claim for "aggravation of pre-existing degenerative disc disease, lumbar spine." Apparently, the September 1983 DHO's order was not administratively appealed. Commission records do not show that relator ever moved for the recognition of any additional claim allowances or that the commission ever adjudicated additional claim allowances subsequent to the additional allowance of September 1983. Accordingly, this magistrate finds that claim No. 80-46774 is not allowed for "lumbosacral spondylosis" notwithstanding that condition is listed as a claim allowance on a notice of referral issued by the Ohio Bureau of Workers' Compensation ("bureau") on October 20, 1998.
 {¶ 10} 2. On March 4, 2003, relator filed an application for PTD compensation. In support, relator submitted a report, dated February 10, 2003, from Luis F. Pagani, M.D. Dr. Pagani opined as to disability related to claim No. 80-46774. He wrote:
Mr. Raymond Edwards suffered an accident on the job on 6/2/80. His claim was recognized as contusion of the lumbar spine, right elbow, right shoulder, and for aggravation of preexisting degenerative disc disease of the lumbar spine. * * *
* * *
At this point in time, he is not able to perform any work, even at the sedentary level, and consequently has reached a point that he is permanently and totally disabled for any gainful employment in any capacity. This disability is a consequence and is due solely to the result of the allowed conditions of his claim resulting from the 1980 injuries recognized in the claim 80-46774 with a date of injury of 6/2/80.
 {¶ 11} 3. On May 20, 2003, relator was examined at the commission's request by James T. Lutz, M.D., who is board certified in occupational medicine. Dr. Lutz examined only for the claim allowances in 80-46774, which he listed in his report as follows: "Claim allowances: Contusion lumbar spine, right elbow and right shoulder; aggravation of preexisting degenerative disc disease lumbar spine."
 {¶ 12} 4. In his report, Dr. Lutz found that relator has a 17 percent whole person impairment resulting from the claim allowances in claim No. 80-46774.
 {¶ 13} 5. Dr. Lutz completed a physical strength rating form dated May 20, 2003. On the form, Dr. Lutz indicated by checkmark that relator can perform "sedentary work." He also wrote "Occasional overhead work [with right] upper extremity."
 {¶ 14} 6. On May 21, 2003, relator was examined, at the commission's request, by Thomas Schrimpf, M.D., who specializes in otolaryncology. In his narrative report, Dr. Schrimpf stated that relator "has had bilateral hearing aides for the last nine years." He further wrote:
Physical examination reveals both tympanic membranes to be normal. Examination of the nose showed the septum to be deviated to the left anteriorly. Examination of the oral cavity and neck was negative. Audiometric evaluation was peformed by Richard Dubrowski, Au.D., an audiologist. This revealed a high frequency sensineural hearing loss with speech reception threshold of 20 decibels in each ear and 90% discrimination in each ear.
* * *
DIscussion and Opinions
It is my opinion, within a reasonable degree of medical certainty, that this claimant has reached maximum medical improvement with regard to his allowed condition of sensineural hearing loss. According to the AMAGuides to Impairment, 5th Edition, Chapter 11, Tables 1, 2 and 3, he has a 16.9% hearing loss in the right ear and a 15% hearing loss in the left ear, which equals binaural impairment of 15.3%, which is then a 6% impairment to the whole man.
Conclusion
This claimant does have a 15.3% binaural hearing loss, which is a 6% impairment to the whole man as a result of his allowed condition and he has reached maximum medical improvement.
 {¶ 15} 7. Dr. Schrimpf also completed a physical strength rating form dated May 21, 2003. On the form, Dr. Schrimpf indicated by a checkmark that relator can perform "very heavy work."
 {¶ 16} 8. The commission requested an employability assessment report from John M. Bronish, a vocational expert.
 {¶ 17} 9. The Bronish report, dated July 14, 2003, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
 {¶ 18} Indicating acceptance of Dr. Schrimpf's reports, and responding to the above query, Bronish wrote: "Claimant is not restricted from any work including Former Job Positions."
 {¶ 19} Indicating acceptance of Dr. Lutz's reports, Bronish listed the following "employment options": "Order Clerk, Food Beverage; Assembler, Bench; Cashier; Fast Foods Worker; Surveillance-System Monitor; Gate Guard."
 {¶ 20} Under "Effects of Other Employability Factors," Bronish wrote:
1) Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
Answer: Age: Writer does not view age to be [a] valid determining factor for function.
Education: Claimant's Limited, 8th grade educational achievement, in addition to his self-report of not being able to read or write or perform basic math functions well, presents as a negative profile regarding employability.
Work History: Claimant's self-reported, somewhat disjointed 30-year plus Work History was in a number of jobs that range concerning Strength Capacity from Light to Heavy and that range concerning Specific Vocational Preparation from Level 2/Unskilled to Level 4/Semi-Skilled.
Although claimant did learn some skills in his Work History, none of them would be considered to be directly transferable within his Residual Functional Capacity.
* * *
2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: Review of background data indicates that claimant would not be successful if any type of Short Term Training was required in order for him to re-enter the work force. With this in mind, the majority of jobs suggested in Section II herein for the most part are Unskilled; i.e., they require only a short demonstration or no more than up to 30 days of On-The-Job Training in order to master.
Under "IV. Employability Assessment Database," Bronish wrote:
B. WORK HISTORY:

 JOB TITLE * * * SKILL LEVEL STRENGTH DATES
 Mail Handler * * * 4 Semi-Skilled Light 60's 70's
 Drum Cleaner, * * * 2 Unskilled Heavy 1987
 Steam
 Laborer, Stores * * * 2 Unskilled Medium 1987
 Packager, Hand * * * 2 Unskilled Medium Not noted
 {¶ 21} 10. Following an August 28, 2003 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application.
 {¶ 22} 11. On September 20, 2003, relator moved for reconsideration of the SHO's order of August 28, 2003.
 {¶ 23} 12. On March 30, 2004, the three-member commission heard relator's September 20, 2003 motion for reconsideration. In an order mailed May 29, 2004, the commission granted reconsideration, vacated the SHO's order of September 20, 2003, and entered a new order as to the merits of the PTD application. The commission's order states:
The Industrial Commission finds that it retains continuing jurisdiction to correct a clear mistake of law, pursuant to R.C. 4123.52 and State exrel. Nicholls v. Indus. Comm. (1988), 81 Ohio St.3d 454. The injured worker has presented evidence of a clear mistake of law and a clear mistake of fact in the Staff Hearing Officer's order, dated 08/23/2004 [sic], from which remedial action would clearly follow. Specifically, the Staff Hearing Officer failed to consider the allowed conditions in claim #80-46774 in his ruling on the injured worker's application for permanent total disability compensation. The allowed conditions in claim #80-46774 are "aggravation of degenerative disc disease, lumbar spine; contusion lumbar spine; right elbow injury; right shoulder injury." Accordingly, the Industrial Commission exercises its continuing jurisdiction to address the merits of the injured worker's application, filed 03/04/2003.
* * *
As to the merits, after full consideration of the testimony presented at hearing and the evidence on file, it is the order of the Industrial Commission that the application for permanent total disability compensation, filed 03/04/2003, is denied. This decision is based upon the reports of Dr. Schrimpf and Dr. Lutz and an analysis of the inured worker's vocational factors.
On 05/20/2003, Dr. Lutz examined the injured worker on behalf of the Industrial Commission with respect to the allowed physical conditions caused by his 1980 injury (claim #80-46774). Dr. Lutz concluded that the injured worker was capable of performing sedentary work, including "occasional overhead work with right upper extremity."
On 05/21/2003, Dr. Schrimpf, an otolaryngology [sic] specialist, examined the injured worker on behalf of the Industrial Commission, regarding the allowed condition of "bilateral sensorineural hearing loss," resulting from claim #OD182451. Dr. Schrimpf concluded that considering only the injured worker's "bilateral sensorineural hearing loss" condition allowed in claim #OD182451, the injured worker would not be capable of performing very heavy work.
John M. Bronish, M.P.A., completed an Employability Assessment Report on 07/14/2003. Upon accepting the residual functional capacities described by Dr. Schrimpf and Dr. Lutz, Mr. Bronish concluded that the injured worker was capable of performing the following employment opitions: "Order Clerk, Food and Beverage; Assembler, Bench; Cashier; Fast Food Worker; Surveillance-System Monitor; Gate Guard."
It is found that the injured worker's age of 67 does not preclude the possibility of training for the types of employment noted by Mr. Bronish as well as other sedentary jobs, such as a store greeter, ticket taker, etc.
The injured worker's employment history includes the following: three years in the Air Force, loading and unloading mail from planes, and driving a transportation truck; ten years as a Mail Handler, lifting mail sacks, working on a conveyor belt and opening packed mail; Warehouseman, lifting 55 gallon drums, cleaning and stacking them; Laborer, working on an assembly line, packing and unpacking boxes. The injured worker held these jobs over a span of more than thirty years. Mr. Bronish found that the injured worker's job history noted above fell into the strength category ranging from light to heavy, and in the skill level ranging from unskilled to semiskilled.
It is found that the injured worker's prior experience as an assembly line worker would be an asset in obtaining such work, as long as it involved handling light weight objects.
Although the injured worker's eighth grade education may limit his sedentary employment options, it is found that it does not bar future employment. His self-assessment that he can perform reading, writing and basic math, even though not well, is some evidence that he possesses basic abilities in these areas. It is found that the injured worker's educational level would not preclude him from jobs that require short-term or on-the-job training, such as a Bench Assembler, Fast Foods Workers, Store Greeter, Gate Guard, etc.
The foregoing analysis of the injured worker's disability factors, establishes that the injured worker retains the residual functional capacity to perform sustained remunerative employment at the sedentary level.
According to his testimony at hearing, the injured worker left the workforce in 1988 when he was fired because he was unable to do his job. He stated that he attempted to pursue vocational rehabilitation by writing a letter to the "Ohio Development Department." He stated that he did not receive a response. He further stated that he did not seek any other vocational assistance.
According to State ex rel. Wilson v. Indus. Comm. (1997),80 Ohio St.3d 250, injured workers must be held to a standard of accountability, and a failure to improve one's employment skills or seek vocational rehabilitation, must be taken into consideration. It is found that since he left the workforce 16 years ago, at the age of 51, the injured worker would have been able to learn new skills and/or improve his educational functioning from which he could have built a new career. It is concluded that the injured worker's actions significantly contributed to his long-standing absence from the workforce as opposed to his claim-related disabilities. The Industrial Commission finds that the injured worker's alleged letter seeking vocational rehabilitation does not excuse the injured worker's 16-year failure to re-educate and/or re-train himself to re-enter the workforce.
Based on the foregoing findings, it is found that the allowed conditions do not prevent the injured worker from performing sustained remunerative employment and that his absence from the workforce is significantly due to his failure to pursue any re-employment efforts during the past 16 years. Therefore, the application for permanent total disability compensation is denied.
 {¶ 24} 13. On June 22, 2004, relator, Raymond Edwards, filed this mandamus action.
Conclusions of Law:
 {¶ 25} Two issues are presented: (1) whether the commission considered all allowed conditions of the two industrial claims in denying the PTD application, and (2) whether the commission abused its discretion in finding that relator had failed to seek vocational rehabilitation during the 16 years since he left the workforce.
 {¶ 26} The magistrate finds: (1) the commission considered all allowed conditions of the two industrial claims, and (2) the commission did not abuse its discretion regarding the rehabilitation issue. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} Turning to the first issue, it is settled law that in adjudicating a PTD application, the commission must ordinarily consider every allowed condition of the industrial claims. State ex rel. Johnsonv. Indus. Comm. (1988), 40 Ohio St.3d 339; State ex rel. Cupp v. Indus.Comm. (1991), 58 Ohio St.3d 129; State ex rel. Didiano v. Beshara
(1995), 72 Ohio St.3d 255; State ex rel. Roy v. Indus. Comm. (1996),74 Ohio St.3d 259.
 {¶ 28} Here, relator contends that claim No. 80-46774 is allowed for "lumbosacral spondylosis" and that the commission failed to consider this condition. Relator is incorrect in claiming that claim No. 80-46774 is allowed for "lumbosacral spondylosis." As previously noted, the record before this court conclusively shows that the claim is not allowed for "lumbosacral spondylosis." Accordingly, relator's argument lacks merit.
 {¶ 29} The second issue is whether the commission abused its discretion on the rehabilitation issue. Here, relator argues: "It was an abuse of discretion for the Industrial Commission to deny the injured worker permanent and total benefits on the ground that he could not get a response to his request for rehabilitation." (Relator's brief, at 5.)
 {¶ 30} Clearly, the commission did not deny the PTD application on grounds that relator did not receive a response to the letter he allegedly wrote to the "Ohio Development Department." In short, relator's argument is premised upon a misreading of the commission's order. Thus, the argument lacks merit.
 {¶ 31} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.